FILED
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF GEORGIA

2008 JUN 30   PM 3: 37

CLERK _____
SO. DIST. OF GA.

### DUBLIN DIVISION

LAMONT HOWARD,                          )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )       CV 307-045
                                        )
FNU TRIPP, Doctor, Dodge State Prison,  )
et al.,                                 )
                                        )
            Defendants.                 )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate incarcerated at Dodge State Prison in Chester, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended

complaint. (Doc. no. 9). Plaintiff has submitted an amended complaint, (doc. nos. 10 & 11), and it is this document that the Court will now screen.[1]

## I. BACKGROUND

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants: (1) FNU Tripp, Doctor, Dodge State Prison ("DSP"); (2) Tonya Kemp, Chief Nurse, DSP; (3) Tina Sanders, Deputy Warden of Care and Treatment, DSP; (4) Billy Brown, Warden, DSP; (5) James E. Donald, Commissioner; Georgia Department of Corrections ("GDC"); (6) Johnny Sikes, Field Operations Manager, GDC; and (7) Delores Warren, Administration Assistance, GDC.[2] (Doc. no. 11, pp. 1 & 4). Plaintiff submits that Defendants have, *inter alia*, exhibited deliberate indifference to his serious medical needs. (Doc. no. 10, p. 2).

Plaintiff alleges that, because he tested positive for Hepatitis C, he was transferred to DSP in December 2006 to receive medical treatment. (Doc. no. 10, p. 2; doc. no. 11, p. 5). According to Plaintiff, upon his arrival at DSP, he was not examined in violation of GDC policy. (Doc. no. 10, p. 2). Plaintiff contends that, on January 1, 2007, he submitted a "Health Service Request" form requesting examination by a liver specialist, but Defendant

---

[1] In the March 17, 2008 Order directing Plaintiff to file an amended complaint, the Court instructed Plaintiff to submit, in accordance with the terms of that Order, only one amended complaint stating all related claims that he wishes the Court to consider as a basis for awarding the relief sought. (Doc. no. 9, pp. 5-6). Although docketed as two separate filings, Plaintiff actually filed, in accordance with the Court's March 17, 2008 Order, one amended complaint and an attached statement of claim (doc. nos. 10 & 11), which the Court will construe as the amend complaint.

[2] The Court notes that Plaintiff also submits that Defendant Warren is employed by the GDC as the "Field Operation Administrative Assistance." (Doc. no. 10, p. 2).

Kemp never responded to his request. (Doc. no. 11, p. 5). Plaintiff also maintains that, during a scheduled examination on May 11, 2007, Defendant Tripp failed to treat his Hepatitis C. (Id.).

Plaintiff further alleges that, in May 2007, he submitted an informal grievance concerning Defendant Tripp's failure to treat his Hepatitis C and his several unanswered "Health Service Request" forms, but Defendant Sanders never responded. (Doc. no. 11, p. 5; doc. no. 12, p. 2). Plaintiff contends that he then submitted several more "Health Service Request" forms to Defendant Kemp requesting examination by liver and lung specialists. (Doc. no. 12, p. 2). Plaintiff contends that, in response to the May 22, 2007 request concerning his liver condition, he was advised that he would not be given a physical "until one year seven months." (Id.). Plaintiff maintains that, although he received a response to his May 24, 2007 request concerning his liver condition, he was never issued a "call-out" to see a physician. (Id.). Plaintiff complains that, in response to his June 2, 2007 request concerning breathing difficulties, he was merely provided with nasal spray without examination by a physician. (Id.). Plaintiff submits that, in response to his June 8, 2007 request concerning evaluation by a physician, Defendant Kemp advised him that "it would be a year and four months before this [would] happen." (Id. at 3).

Plaintiff next alleges that, on June 3, 2007, he was examined by Defendant Kemp. (Id. at 2). According to Plaintiff, Defendant Kemp "intentionally denied [him] access to medical care." (Id.). Plaintiff contends that, although his medical record indicated that he was suffering from Hepatitis C, Defendant Kemp failed to refer him to, or schedule an appointment with, a physician or liver specialist. (Id.).

3

Plaintiff further alleges that, in June 2007, he filed grievance appeals concerning his transfer to DSP for medical treatment, but he never received a response. (Id. at 3). Plaintiff also contends that he sent letters to the Ombudsman's Office, the GDC Offender Administration Corrections Division, and Defendant Donald concerning his grievances, medical treatment, and conditions of confinement, but he never received a response. (Id. at 3-4). Plaintiff complains that he also submitted another grievance requesting to "view and flag" his medical records, but Defendant Sanders denied the grievance without specifically responding to the allegations contained therein. (Id. at 4).

Plaintiff alleges that, on June 25, 2007, he was examined by Defendant Tripp. (Id.). Plaintiff contends that, during the examination, he complained about "having problems with his liver due to '[H]epatitis C' issue." (Id.). Plaintiff maintains that, despite his complaints and requests, Defendant Tripp failed to refer him to a liver specialist. (Id.).

Finally, Plaintiff alleges that, in June and July 2007, he again sent letters to the Ombudsman's Office, as well as Defendants Donald, Sikes, and Warren concerning alleged noncompliance with GDC policy, his medical treatment at DSP, and the conduct of prison officials, but he never received a response. (Id. at 4-5). Plaintiff contends that, on June 5, 2007, he filed a grievance because "[he] was ordered to Baldwin State Prison[] for a mental health evaluation without [his] consent."[3] (Id. at 5). Plaintiff concludes that, on July 18, 2007, he was issued a disciplinary report, and subsequently confined in administrate segregation for fourteen (14) days, by Defendant Sanders in retaliation for filing grievances

---

[3]Plaintiff alleges that, once he arrived at Baldwin State Prison, an unnamed counselor informed him that someone at DSP placed a letter, with an attached disciplinary report, in his medical file indicating that he had a mental condition. (Doc. no. 12, p. 5).

discussed in the above-captioned complaint. (Id. at 6). As relief, Plaintiff requests $30,000,000.00 in compensatory and punitive damages, as well as unspecified injunctive relief. (Doc. no. 11, p. 6).

## II. DISCUSSION

### A. Defendants Not Mentioned in the Amended Complaint

In the Court's Order directing Plaintiff to amend his complaint, he was warned that his amended complaint would supersede his previously filed complaint. (Doc. no. 9, p. 4 (citing Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994))). Plaintiff was also specifically told that he must name all defendants in the caption and the body of the amended complaint. (Id. at 5). Upon review of the amended complaint, the Court finds that Plaintiff no longer names Mrs. Debera Moore and Mr. Jeffery Hobbs, two of the original Defendants, as parties to the lawsuit. Furthermore, the Court finds that, although Plaintiff names Mr. Billy Brown as a Defendant in his amended complaint, he fails to assert any allegations of wrongdoing related to Defendant Brown anywhere in his statement of claims. Accordingly, Defendants Moore, Hobbs, and Brown should be dismissed from this lawsuit. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury").

### B. Policy, Grievance, Request, and Letter Claims

To the extent Plaintiff may be claiming that any Defendant should be held liable for failing to adhere to GDC policy, or properly handle his grievances, respond to his letters, or respond to his requests in compliance with DSP or GDC policy, such allegations fail to state

5

a claim upon which relief can be granted. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (per curiam) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the

plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff alleges that, upon his arrival at DSP, he was not examined in violation of GDC policy. (Doc. no. 12, p. 2). Plaintiff also contends that he submitted several "Health Service Request" forms, grievances, and letters to Defendants Kemp, Sanders, Donald, Sikes, and Warren without receiving the sought-after relief, or in some instances, a response. (Doc. no. 11, p. 5; doc. no. 12, pp. 2-5). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Similarly, "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the *Constitution and laws' of the United States*," and thus, neither alleged violations of GDC policy nor allegations concerning the handling of Plaintiff's grievances, letters, or requests in accordance with DSP or GDC procedures are actionable under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 285

7

(2002) (emphasis added). Therefore, to the extent Plaintiff may be claiming that any Defendant should be held liable for failing to adhere to GDC policy, or for failing to properly handle his grievances, respond to his letters, or respond to his requests in compliance with DSP or GDC policy, such allegations fail to state a claim upon which relief can be granted.

## C.     No Liability Based on *Respondeat Superior*

To the extent Plaintiff blames Defendants Donald, Sanders, Sikes, or Warren for the alleged constitutional violations of other individuals, such allegations also fail to state claims upon which relief may be granted. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff does not allege that these Defendants participated in the issuance of his disciplinary report, his confinement in administrative segregation, or his medical treatment.[4]

---

[4]On this point, the Court notes that "[s]upervisory officials must rely on their subordinate professionals to make competent medical decisions. As long as supervisory officials have no reason to believe that their subordinates are failing to carry out their duties in a competent manner, they should not be held liable for medical decisions over which they have no direct control." Waldrop v. Evans, 681 F. Supp. 840, 851 (M.D. Ga. 1988).

Similarly, Plaintiff fails to allege a "causal connection" between Defendants Donald, Sanders, Sikes, or Warren and the alleged constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has not alleged the necessary causal connection, with respect to Defendants Donald, Sanders, Sikes, or Warren, to hold them liable for the alleged constitutional violations of other individuals. Plaintiff has proffered no facts suggesting that these Defendants were responsible for a custom or policy resulting in the issuance of his disciplinary report, his confinement in administrative segregation, or affecting his medical treatment. Although Plaintiff alleges that he submitted "Health Service Request" forms, filed grievances, and sent several letters to these Defendants, Plaintiff has not alleged that these

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

Defendants knew about any widespread abuses related the issuance of disciplinary reports, the confinement of inmates in administrative segregation, or the medical treatment of inmates at DSP.[6] Simply put, Plaintiff has failed to state a claim against Defendants Donald, Sanders, Sikes, or Warren based on their respective supervisory positions. As these are the only remaining claims against Defendants Donald, Sikes, and Warren, they should also be dismissed from this case.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Brown, Moore, Hobbs, Donald, Warren, and Sikes, that Plaintiff's claim against Defendant Sanders based on her supervisory position, as well as Plaintiff's policy, grievance, request, and letter claims be **DISMISSED.**[7]

SO REPORTED and RECOMMENDED on this 30th day of June, 2008, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6] On this point, receipt of a grievance or letter alone does not satisfy the burden of putting a supervisor on notice of a widespread problem. Cf. Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that the Commissioner of the Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

[7] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Tripp, Kemp, and Sanders based on Plaintiff's deliberate indifference and retaliation claims.